UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| Steven P. Mutersbaugh, et al., | ) | CASE NO. 5:17CV1300 |
| --- | --- | --- |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| General Electric, Inc., | ) | (Resolves Docs. 62 and 63) |
| Defendant. | ) | |

Pending before the Court is a motion to exclude expert testimony (Doc. 62) and a motion for summary judgment (Doc. 63) both filed by Defendant General Electric, Inc. ("GE"). Plaintiffs Steven Mutersbaugh, Alan Medvic, and Jennifer Grubbs have opposed both motions, and GE has replied in support. Upon review, both motions are GRANTED.

**I. Facts & Procedure**

The underlying facts that generated this lawsuit are almost entirely undisputed. On December 3, 2016, a fire burned down the residence at 266 East Tallmadge Road in Akron, Ohio. Five of the residents of the home, Omar Riley, Aniyla Riley, Shanice Riley, Shirley Wallis, and Shaniya Simpson, died in or because of injuries suffered in the fire. One other person was present in the home, Jennifer Grubbs, and was significantly injured but survived the fire. The estates of the decedents and Grubbs filed this lawsuit on June 21, 2017.

In their complaint, Plaintiffs allege that the cause of the fire was a defective GE gas stove. Plaintiffs allege claims of common law negligence, design defect, manufacturing defect, and failure to warn. GE has moved for summary judgment on all claims in the complaint.

Additionally, GE has sought to exclude the expert opinions and testimony of Samuel Sero. Plaintiffs have opposed these motions. The Court now resolves the parties' arguments.

## II. Legal Standards

1. *Daubert* motion

Federal Rule of Evidence 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Further, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "established the standard for admissibility of scientific expert testimony under Federal Rule of Evidence 702." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 907 (6th Cir. 2004). Because *Daubert* requires that "'any and all scientific testimony or evidence admitted [be] not only relevant, but reliable,'" *id*. (quoting *Daubert*, 509 U.S. at 589), this Court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. (quoting *Daubert*, 509 U.S. at 592-93). The evidence need not be "unassailable" to be admissible. *U.S. v. Turner*, 287 Fed. Appx. 426, 433 (6th Cir. 2008) (quoting *United States v. Mahone*, 453 F.3d 68, 72 (1st Cir. 2006)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

Moreover, *Daubert* provides a "non-exclusive checklist of factors" for this Court to use to "assess[] the reliability of scientific expert testimony." *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004). Those factors include:

> 1) whether the expert's scientific technique or theory can be, or has been, tested; 2) whether the technique or theory has been subject to peer review and publication; 3) the known or potential rate of error of the technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) whether the technique or theory has been generally accepted in the scientific community.

*Id.* (citing *Daubert*, 509 U.S. at 592-95; *Hardyman v. Norfolk & W. Ry.*, 243 F.3d 255, 260 (6th Cir. 2001)). Applying the foregoing standard to Sero's opinion and testimony compels exclusion.

In his report, Sero opines as follows:

> It is my opinion based upon my analysis and examination to date and within a reasonable degree of engineering certainty was the failure of the gas regulator valve supplied with the GE Americana Gas Stove. The photos 13-16 below depict an exemplar gas regulator valve in an intact state. Note that a rubber gasket is used between the upper and lower pieces of the valve assembly. Breakdown of this gasket will lead to a slow gas leak without damage to the valve. However, with the regulator valve located as depicted in the stove this slow gas leak will be lit off when the back burner is lit. The flame from the incipient gas leak will be hidden by the valve being located as it is. As the flame continues the gasket will be totally consumed widening the flame, destroying the gasket, pocketing gas, and subjecting the aluminum to a combination of heating and the high-pressure side of the valve forcing the softened aluminum to flow as seen in the incident gas regulator valve.

Doc. 67-3 at 12. Essentially, Sero asserts that heat from the rear burner of the stove over time degraded the gasket in the gas regulator. This degradation led to a gas leak that was eventually ignited through normal use of the stove burner.

Sero's opinion must be excluded for numerous reasons. First and foremost, it does not allow for any form of testing or review. During his deposition, Sero admitted that he had not done

any calculations to support his findings.  He admitted that he had done no modeling and admitted he had done no sketches.  Sero was asked the basis of his opinion as follows:

> Q.  Okay.   You just made -- you saw the damage, and you made the assumption that this is how it happened, correct?
>
> A.  No, it wasn't assumption, the reason this is what happened.   It's what fits the scenario of the fire.

Doc. 62-1 at 61.

Sero's methodology herein is similar to that which he employed in *Buck v. Ford Motor Co.*, 810 F.Supp. 2d 815 (N.D. Ohio 2011).  In *Buck*, a colleague on this Court found that Sero had effectively used a "differential diagnosis" to reach his conclusion.  *Id.* at 829-830.  In excluding his opinion, the Court noted: "On review of his proposed testimony, I find that Sero's opinion general causation opinion is unreliable because: 1) his methodology is not reliably applied; 2) his theory is untested; and 3) his theory has not been submitted for peer review or publication." *Id.* at 829.  The Court went on to note that "Sero has not reliably ruled in EMI as a potential cause of sudden acceleration, because he has not supplemented his conclusions based on general engineering principles with reliable methodology." *Id.* at 831 (citation and quotation omitted).

Similar to this matter, "Sero does not, for example, describe: what he did; how he did it; [and]what, if any controls he used[.]" *Id*. at 832.  "The criterion of the scientific status of a theory is its falsifiability, or refutability, or testability." *Daubert*, 509 U.S. at 593. Without providing any guidelines by which Sero's conclusion can be tested, his opinion cannot meet this element of the *Daubert* standard.

Ostensibly, Sero found a failed component, the gas regulator valve, and then formulated a theory of causation that would lead back to that failed component.  While such methodology may result in proper results if scientific methodology is utilized, the Court cannot say that Sero used

such methodology. Sero contends that exposing the gas regulator valve to heat over time led to the failure of a rubber gasket. Sero, however, never obtained the chemical makeup of the alleged failed rubber gasket. Moreover, Sero never opined on the heat necessary to cause the failure of this gasket. Sero also failed to address the remaining components of the gas regulator valve and how their properties could affect his analysis. Instead, Sero chose the result he desired – a fire caused by a defect in the stove – then cherrypicked the facts that supported his conclusion. However, even under those facts, Sero did not utilize *any* scientific methodology to reach his conclusions.

It is difficult for the Court to comprehend how Sero could opine on the failure of the gasket and gas regulator valve without ever physically examining them. Instead, Sero looked at pictures of those components. Sero also never tested his theories on similar components and fails to adequately explain why this testing could not be done. Moreover, Sero wholly fails to explain why his alleged conclusion has not led to a single other fire being reported that was caused by this alleged defect. For all of the reasons above, Sero's opinion must be excluded.

2. Summary judgment

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a

material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

**III. Law and Analysis**

In their opposition to summary judgment, Plaintiffs assert that even without an expert opinion that material issues of fact remain for a jury to determine. The Court disagrees.

In order for any of Plaintiffs' claims to survive, they must provide some evidence of a defect in the stove. Plaintiffs, time and again, assert that the "defect alleged in the Americana range is that the gas regulator, which feeds fuel into the range, is located in close of a proximity to the right rear burner, a heat source. The heat from the burners degrades the materials in the regulator, causing a gas leak which can turn the open flame on the burner on the stove into a

powerful and unpredictable fire." Doc. 67 at 8.  Plaintiffs, however, offer no *evidence* in support of this alleged defect.  Plaintiffs attempt to assert the defect is "obvious" because any review of the design would show the proximity of the gas regulator valve to the rear burner.  While this is true, Plaintiffs have offered no competent evidence that this "proximity" was in any dangerous or problematic.

Proper testing could have revealed the heat necessary to damage the components of the gas regulator valve.  Additional testing could have revealed whether or not the placement of the gas regulator valve in relation to the rear burner allowed for such heat to reach the regulator.  Testing could also have revealed for what period of time the regulator would need to be exposed to this heat to result in failure.  Plaintiffs, however, never engaged an expert that performed any of this type of testing.  Without such testing, Plaintiffs' assertions are nothing more conclusory statements without an evidentiary foundation.  With no Rule 56 evidence to support their defect claims, all of the counts in the complaint must fail.

## IV. Conclusion

Defendant GE's motion to exclude Sero's expert report, testimony, and opinions is GRANTED.  GE's motion for summary judgment is GRANTED.  Judgment on the complaint is hereby entered in favor of Defendant.

       IT IS SO ORDERED.

Date: March 28, 2019         */s/ John R Adams*_____
       JOHN R. ADAMS
       U.S. DISTRICT JUDGE